Marc L. Godino (#182689)
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
Email: mgodino@glancylaw.com
        info@glancylaw.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON MANIER, on behalf of herself and all others similarly situated, | CASE NO.: |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | DEMAND FOR JURY TRIAL |
| HILL'S PET NUTRITION, INC. and COLGATE-PALMOLIVE COMPANY. | |
| Defendants. | |

Sharon Manier ("Plaintiff") brings this action on behalf of herself and all others similarly situated, including a proposed class of nationwide consumers, inclusive of a proposed subclass of California consumers defined herein, against Hill's Pet Nutrition, Inc. and Colgate-Palmolive Company ("Defendants") and alleges:

## NATURE OF THE ACTION

1.  Defendants recalled various varieties of their Hill's brand Science Diet and Prescription Diet canned dog foods (collectively, the "Products") on January 31, 2019 and expanded the recall on March 20, 2019 to include additional Products.[1]

2.  Defendants recalled the Products because they contain Vitamin D in an amount that is extremely dangerous for dogs to consume.

3.  Defendants formulated, manufactured, distributed, and sold these Products to consumers despite their omnipresent labeling, advertising, and marketing campaign which represents and warrants that they are healthy, safe, inspected on a regular basis, subject to rigorous quality assurance protocols, and/or formulated to target specific health needs.

4.  The amount of Vitamin D in the Products poses significant health risks to dogs that may gradually worsen from immediate to prolonged exposure, and include symptoms such as vomiting, loss of appetite, increased thirst, increased urination, excessive drooling, and weight loss.  If dogs are exposed to Vitamin D toxicity for prolonged periods of time, this can lead to renal dysfunction, which can cause death.

5.  As a result of Defendants' false and misleading representations and warranties which conveyed that the Products were healthy, safe, inspected on a regular basis, subject to rigorous quality assurance protocols, and/or formulated to

---

[1] *See* https://www.hillspet.com/productlist.

target specific health needs, dog owners across the country, including Plaintiff and members of the proposed nationwide class and California subclass defined herein, were subjected to the pain of watching their beloved dogs suffer from Vitamin D toxicity after consuming the Products.   Due to Vitamin D toxicity caused by consuming the Products, many of these dogs have required veterinary treatment, prescription medications, and unfortunately many have died, all of which resulted in their owners incurring significant monetary losses and other damages.

6.    Despite publishing a video to Hill's Pet Nutrition, Inc.'s website after the initial January 31, 2019 recall representing and warranting that "[…] we isolated and identified the issue. We now have tighter quality controls in place to prevent this from happening again. By feeding your pet Hill's, you've placed your trust in us and we are working hard to ensure that your trust is well placed,"[2] Defendants failed to include all of the toxic Products because they expanded the recall on March 20, 2019 to include additional Products

7.    Furthermore, Defendants knew or should have known that its Products contained toxic amounts of of Vitamin D prior to the January 31, 2019 recall.

8.    Defendants claim to subject their suppliers and raw material ingredient providers to regular quality assurance and safety checks, and claim to inspect their

---

[2] *See* https://www.hillspet.com/productlist/jan-31-press-release.

CLASS ACTION COMPLAINT

ingredients daily, which would have revealed the presence of toxic levels of Vitamin D far in advance of the initial recall.[3]

9.     In advance of the initial January 31, 2019, Defendants were also aware that Vitamin D toxicity was a well-known risk, as the FDA warned consumers on December 3, 2018 that several other brands of dog food contained toxic levels of Vitamin D.[4]

10.     As such, Defendants' recall was not timely, and both the hazardous qualities Defendants' Products and the risk that consumers' dogs would be exposed to them was worsened by Defendants' unreasonable delay in warning consumers that the Products were dangerous for dogs to eat.

## PARTIES

11.     Plaintiff Sharon Manier, who is a resident of Riverside, Riverside County, California, purchased Defendants' Products from retailers in Riverside County, California within the past three years, and also between December 2017 and May 2018.  Plaintiff purchased the Products because she believed that they were safe for her chihuahua Ms. Maine.  Critically, Plaintiff also believed that Defendants' Products were superior to other brands of dog food because their labeling, marketing, and advertising conveyed that they were more nutritious and specialized than other dog foods, and contained certain ingredients or were

---

[3] *See* https://www.hillspet.com/about-us/quality-and-safety.

[4] *See* https://www.fda.gov/animalveterinary/newsevents/ucm627485.htm.

formulated in a way that would meet Ms. Maine's specific health and dietary needs. This, in part, caused Plaintiff to pay more money for the Products than she would have paid for other brands of dog food.

12.    After consuming the Products in May 2018, Ms. Maine became ill, specifically showing indications that she was suffering from Vitamin D poisoning. Upon presenting with these symptoms, Plaintiff switched to a different brand of food and Ms. Maine recovered. Plaintiff was unaware that the Products were the cause of Ms. Maine's health problems until shortly before filing this Complaint.

13.    Defendant Colgate-Palmolive Company is a Delaware corporation with its principle place of business at 300 Park Avenue, New York, New York 10022. Colgate-Palmolive Company is the parent company of Hill's Pet Nutrition, Inc. and exercises control over Hill's Pet Nutrition, Inc. and derived profit from the sale of the Products.  Specifically, Colgate-Palmolive Company's 2018 10-K filed states "Colgate, through its Hill's Pet Nutrition segment…is a world leader in specialty pet nutrition products for dogs and cats" and states "Pet Nutrition products include specialty pet nutrition products manufactured and marketed by Hill's Pet Nutrition." Furthermore, according to Colgate-Palmolive's 2018 10-K, "[n]et sales for Hill's Pet Nutrition were [$2.388 billion] in 2018," which includes net sale proceeds from the Products.

14.    Defendant Hill's Pet Nutrition, Inc. is a Delaware corporation with its principal place of business at 400 SW 8th Avenue, Topeka, Kansas 66603.

15.    Defendants formulated, manufactured, distributed, labeled, advertised, and sold the Products to consumers throughout the United States and California, specifically through an extensive network of brick-and-mortar retailers, veterinary clinics, and also online retailers.

16.    As described herein Defendants represented and warranted that their Products are superior than other brands of dog food and, as such, charged a premium price for them.

## **JURISDICTION**

17.    This Court has jurisdiction over this case pursuant to pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because there are one hundred or more members of the proposed classes, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and there is minimal diversity because Plaintiff both Defendants are citizens of different states.

18.    This Court has personal jurisdiction over Defendants because they Defendants regularly conduct a substantial amount of business in the Central District of California and purposefully placed the Products into the stream of commerce within the Central District of California and throughout the United States. Furthermore, Defendants' wrongful acts and omissions as alleged herein were carried out in California, including in this District, and throughout the United States.

**VENUE**

19.    The Central District of California is a proper venue for this action pursuant to 28 U.S.C. § 1391 because a substantial part of Defendants' acts and omissions giving rise to Plaintiff's claims, occurred within the Central District of California. Defendants transacted business, marketed and advertised their Products in this District, and have derived revenue and profits from the sale of the Products in this District, including from sales to Plaintiff and other citizens of California and the United States.

**PLAINTIFF'S EXPERIENCE WITH THE PRODUCTS**

20.    Plaintiff is the owner of a Chihuahua, Ms. Maine.

21.    In or around December 2017, Plaintiff began feeding Ms. Maine Hill's Science Diet brand dog food.

22.    However, Plaintiff had to stop feeding the Products to Ms. Maine in or around May 2018 because she started suffering from symptoms consisted with Vitamin D poisoning, including lethargic behavior, excessive thirst, problems urinating, and dehydration.

23.    Ms. Maine also had some bouts with diarrhea.

24.    These symptoms began to persist in February 2018.

25.    After switching to a different brand of dog food in or around May 2018, Ms. Maine slowly recovered from these symptoms.

CLASS ACTION COMPLAINT

26.    The Products Plaintiff purchased include at least Hill's Science Diet Adult 7+ Small & Toy Breed Chicken & Barley Entree.

27.    Plaintiff purchased this product from retail locations near her home in Riverside, California because Defendants' labeling, advertising, and marketing conveyed that it would be a safe and nutritious food for her dog.

28.    Ms. Maine would eat roughly 1-3 cans of the product per day.  As such, Plaintiff purchased a significant amount of this product for Ms. Maine and paid a premium price for it over other brands of dog food based on Defendants' representations and warranties that it would be safe, healthy, and nutritious.

29.    Had Plaintiff known that Defendants' Products were dangerous and would cause Ms. Maine to suffer from such severe symptoms of Vitamin D poisoning, she would not have purchased them.

30.    Plaintiff learned that these Products were identified in the Recall Notice prior to filing this Class Action Complaint.

## FACTUAL ALLEGATIONS COMMON TO THE CLASSES

### *The Recall of the Products*

31.    On January 31, 2019 Defendants announced in a press release that they were recalling several of their Products due to a "supplier error," and indicated it could be dangerous to feed their Products to dogs because they may contain toxic

levels of Vitamin D.    Defendants later expanded that recall on March 20, 2019 to include additional Products.[5]

32.    Defendants stated "While vitamin D is an essential nutrient for dogs, ingestion of elevated levels can lead to potential health issues depending on the level of vitamin D and the length of exposure, and dogs may exhibit symptoms such as vomiting, loss of appetite, increased thirst, increased urination, excessive drooling, and weight loss. When consumed at very high levels, vitamin D can in rare cases lead to potentially life threatening health issues in dogs, including renal dysfunction."[6]

**_False and Misleading Misrepresentations and Warranties Made by Defendants_**

33.    Defendants formulated, manufactured, distributed, labeled, advertised, marketed, and sold the Products to consumers all over the United States and in California are one of the largest manufacturers of pet food in the world.

34.    As part of their omnipresent labeling, advertising, and marketing campaign which emphasized to consumers that their Products were healthy, safe, inspected on a regular basis, subject to rigorous quality assurance protocols, and/or formulated to target specific health needs, Defendants claim to "make nutrition a cornerstone of veterinary medicine"[7] and sell their Products through a nationwide network of retail stores, veterinary clinics, and online retailers.    Some of

---

[5] _See_ https://www.hillspet.com/productlist.

[6] _Id._

[7] _See_ https://www.hillspet.com/about-us/our-company.

CLASS ACTION COMPLAINT

Defendants' retailers include, but are not limited to, PetSmart, Petco, Amazon, Chewy, and Walmart.

35.    Defendants claim that their Products are formulated and designed to address nutritional deficiencies and/or other specifically targeted health issues, and Defendants charge a premium price for their Products based on their representations and warranties that they are superior to other brands of dog food.

36.    The Products at issue herein include at least those enumerated in Defendants' January 31, 2019 recall and subsequent March 20, 2019 expansion of that recall, which were published on both Hill's Pet Nutrition, Inc.'s website[8] and the U.S. Food and Drug Administration's ("FDA") website[9]:

---

[8] *See* https://www.hillspet.com/productlist.

[9] *See* https://www.fda.gov/Safety/Recalls/ucm634087.htm.

CLASS ACTION COMPLAINT

| Product Name | SKU Number | Date Code / Lot Code |
|---|---|---|
| Hill's® Prescription Diet® k/d® Kidney Care with Lamb Canned Dog Food, 13oz, 12-pack | 2697 | 102020T25 |
| Hill's® Science Diet® Adult Perfect Weight Chicken & Vegetable Entrée dog food 12 x 12.8oz cans | 2975 | 092020T28 |
| Hill's® Prescription Diet® c/d® Multicare Urinary Care Chicken & Vegetable Stew Canned Dog Food, 5.5oz, 24-pack | 3388 | 102020T18 |
| Hill's® Prescription Diet® i/d® Low Fat Canine Rice, Vegetable & Chicken Stew 24 x 5.5oz cans | 3391 | 092020T27 |
| Hill's® Prescription Diet® r/d® Canine 12 x 12.3oz cans | 7014 | 092020T28 102020T27 102020T28 |
| Hill's® Science Diet® Adult Beef & Barley Entrée Canned Dog Food, 13oz, 12-pack | 7039 | 092020T31 102020T21 |
| Hill's® Science Diet® Adult 7+ Healthy Cuisine Roasted Chicken, Carrots & Spinach Stew dog food 12 x 12.5oz cans | 10449 | 092020T28 |
| Hill's® Science Diet® Healthy Cuisine Adult Braised Beef, Carrots & Peas Stew Canned Dog Food, 12.5oz, 12-pack | 10451 | 102020T28 |
| Hill's® Prescription Diet® c/d® Multicare Canine Chicken & Vegetable Stew 12.5oz | 3384 | 092020T29 102020T10 102020T25 |
| Hill's® Prescription Diet® i/d® Canine Chicken & Vegetable Stew 12.5oz | 3389 | 092020T28 102020T24 102020T25 102020T04 102020T10 102020T19 102020T20 |
| Hill's® Prescription Diet® i/d® Canine Chicken & Vegetable Stew 5.5oz | 3390 | 102020T11 112020T23 122020T07 |
| Hill's® Prescription Diet® z/d® Canine 5.5oz | 5403 | 102020T17 112020T22 |
| Hill's® Prescription Diet® g/d® Canine 13oz | 7006 | 092020T22 112020T19 112020T20 |
| Hill's® Prescription Diet® i/d® Canine 13oz | 7008 | 092020T21 092020T30 102020T07 102020T11 112020T22 112020T23 |
| Hill's® Prescription Diet® j/d® Canine 13oz | 7009 | 112020T20 |
| Hill's® Prescription Diet® k/d® Canine 13oz | 7010 | 102020T10 102020T11 |

| | | |
|---|---|---|
| Hill's® Prescription Diet® w/d® Canine 13oz | 7017 | 102020T24<br>102020T25<br>112020T09<br>112020T10<br>092020T30<br>102020T11<br>102020T12 |
| Hill's® Prescription Diet® z/d® Canine 13oz | 7018 | 102020T04<br>112020T22 |
| Hill's® Prescription Diet® Metabolic + Mobility Canine Vegetable & Tuna Stew 12.5oz | 10086 | 102020T05<br>102020T26 |
| Hill's® Prescription Diet® w/d® Canine Vegetable & Chicken Stew 12.5oz | 10129 | 112020T11<br>112020T05<br>102020T04<br>102020T21 |
| Hill's® Prescription Diet® i/d® Low Fat Canine Rice, Vegetable & Chicken Stew 12.5oz | 10423 | 092020T27<br>092020T28<br>092020T24<br>102020T17<br>102020T19<br>102020T19<br>102020T04 |
| Hill's® Prescription Diet® Derm Defense® Canine Chicken & Vegetable Stew 12.5oz | 10509 | 102020T05 |
| Hill's® Science Diet® Adult 7+ Small & Toy Breed Chicken & Barley Entrée Dog Food 5.8oz | 4969 | 102020T18 |
| Hill's® Science Diet® Puppy Chicken & Barley Entrée 13oz | 7036 | 102020T12 |
| Hill's® Science Diet® Adult Chicken & Barley Entrée Dog Food 13oz | 7037 | 092020T22<br>102020T13<br>102020T14<br>112020T23<br>112020T24 |
| Hill's® Science Diet® Adult Turkey & Barley Dog Food 13oz | 7038 | 102020T06 |
| Hill's® Science Diet® Adult Chicken & Beef Entrée Dog Food 13oz | 7040 | 112020T10<br>112020T11<br>102020T13 |
| Hill's® Science Diet® Adult Light with Liver Dog Food 13oz | 7048 | 112020T19 |
| Hill's® Science Diet® Adult 7+ Chicken & Barley Entrée Dog Food 13oz | 7055 | 092020T31<br>102020T13 |
| Hill's® Science Diet® Adult 7+ Beef & Barley Entrée Dog Food 13oz | 7056 | 102020T28<br>092020T31<br>112020T20<br>112020T24 |
| Hill's® Science Diet® Adult 7+ Turkey & Barley Entrée 13oz | 7057 | 112020T19 |
| Hill's® Science Diet® Adult 7+ Healthy Cuisine Braised Beef, Carrots & Peas Stew dog food 12.5oz | 10452 | 102020T28<br>102020T14<br>102020T21 |
| Hill's® Science Diet® Adult 7+ Youthful Vitality Chicken & Vegetable Stew dog food 12.5oz | 10763 | 102020T04<br>102020T05<br>112020T11 |

37.    On information and believe, Defendants' recall may be expanded to later include additional products that have not been disclosed and, as such, Plaintiff reserves the right to amend this Class Action Complaint to include additional products.

38.    As part of Defendants' omnipresent labeling, advertising, and marketing campaign, they represent and warrant that the Products provide

"[n]utrition that can transform the lives of pets and comfort the pet parents and vets who care for them."[10]

39.    To justify charging Plaintiff and other consumers a premium price for their Products, Defendants tout that "[w]e only accept ingredients from suppliers whose facilities meet stringent quality standards and who are approved by Hill's. Not only is each ingredient examined to ensure its safety, we also analyze each product's ingredient profile for essential nutrients to ensure your pet gets the stringent, precise formulation they need."[11]

40.    To further reinforce the idea that the Products are superior to other available dog food brands and are at all times safe for dogs to eat, Defendants represent and warrant that "[w]e conduct final safety checks daily on every Hill's pet food product to help ensure the safety of your pet's food. Additionally, all finished products are physically inspected and tested for key nutrients prior to release to help ensure your pet gets a consistent products bag to bag."[12]

41.    Defendants then represent and warrant that "[w]e conduct annual quality systems audits for all manufacturing facilities to ensure we meet the high standards your pet deserves. We demand compliance with current Good

---

[10] *See* https://www.hillspet.com/dog-food.

[11] https://www.hillspet.com/about-us/quality-and-safety.

[12] *Id.*

Manufacturing Practices (cGMP) and Hill's high quality standards, so your pet's food is produced under clean and sanitary conditions."[13]

42.    In generally describing their Products, Defendants make a "commitment to quality" with more than 220 veterinarians, food scientists, technicians, and PhD nutritionists working together to develop products that are safe, nutritious, and superior to other brands.[14]

43.    Defendants further represent and warranty that their Products contain the "precise balance" of nutrients needed for a healthy dog: "Guided by science, we formulate our food with precise balance so your pet gets all the nutrients they need — and none they don't."[15]

44.    The Products include dog foods that are part of Defendants' Science Diet and Prescription Diet brands.

45.    Defendants represent and warrant that Science Diet products will "[f]eed your dog's best life with biology-based nutrition" and that "we make our foods using only high-quality ingredients."[16]

46.    Defendants reinforce the notion that the Science Diet Products are superior to other dog foods by claiming on their labels that they are "VETERINARIAN RECOMMENDED" as shown by example below:

_____

[13] *Id.*

[14] *See* https://www.hillspet.com/about-us/nutritional-philosophy.

[15] *Id.*

[16] *See* https://www.hillspet.com/science-diet/dog-food.

1
2
3
4
5
6
7
8
9
10
11
12



13      47.    With regard to its Prescription Diet Products, Defendants emphasize

14  that they work with veterinarians to develop a "unique position to find a solution" to

15  the various dietary and health issues that dogs commonly encounter.[17]
16

17      48.    To reinforce their representations and warranties that the Prescription

18  Diet Products are formulated for specific canine health concerns, Defendants claim

19
    on their labels that they provide "CLINICAL NUTRITION" or "THERAPEUTIC
20
21  DOG NUTRITION" and are designed to address health conditions including but not

22  limited to kidney care, metabolic care, digestive care, skin/food sensitivities, urinary

23
    care, joint care, and aging as shown by example below:
24
25
26
27

28  _____

[17] *See* https://www.hillspet.com/prescription-diet/dog-food.

49.    As demonstrated by Defendants' recall of at least 675,000 cases of Products (at least 13.5 million cans), the consumption of which resulted in Plaintiff and class members' dogs becoming ill or dying due to Vitamin D toxicity and its related symptoms, Defendants' aforementioned representations and warranties about the quality of their Products, the safety of their ingredients, the reliability of their suppliers, and their commitment to engaging in regular quality assurance and safety inspections are false and misleading.

***Defendants Charge a Price Premium for their Products***

50.    Defendants charged a premium for their Products because they knew that their aforementioned representations and warranties were important to consumers, inclusive of Plaintiff and members of the Class and Subclass, and that

such representations and warranties would induce consumers to pay a premium price for the Products over other brands of dog food.

51.    Defendants knew that consumers place an emphasis on the health and safety of their dogs and that this plays a major role in their purchasing decisions. Because health and safety is so important to consumers, they are willing to pay a premium price for Defendants' Products based on their aforementioned representations and warranties which communicate that they are safe, healthy, nutritious, formulated for targeted health needs, and meet certain ingredient supply, quality, testing and oversight, and manufacturing standards.

52.    Defendants' price premium is shown below[18]:

| Brand | Quantity | Price | Unit Price |
|---|---|---|---|
| Hill's Pres. Diet i/d Canine Chicken & Vegetable Stew 12.5 oz. | 12 cans | $39.99 | $3.33 per can $0.27 per ounce |
| Hill's Pres. Diet w/d Canine Vegetable & Chicken Stew 12.5 oz. | 12 cans | $38.99 | $3.25 per can $0.26 per ounce |
| Hill's Science Diet Adult Chicken & Barley Entrée Dog Food 13 oz. | 12 cans | $22.20 | $1.85 per can $0.14 per ounce |
| Hill's Science Diet Adult 7+ Beef & Barley Entrée Dog Food 13 oz. | 12 cans | $22.20 | $1.85 per can $0.14 per ounce |
| Purina ONE SmartBlend Classic Ground Beef and Brown Rice Adult 13 oz. | 12 cans | $12.67 | $1.06 per can $0.08 per ounce |
| Iams ProActive Health Adult Chicken and Whole Grain Rice Pate 13 oz. | 12 cans | $16.80 | $1.40 per can $0.11 per ounce |
| Nature's Recipe Easy-to-Digest Chicken, Rice & Barley Recipe Cuts in Gravy Stew 13.2 oz. | 12 cans | $13.99 | $1.17 per can $0.09 per ounce |
| Purina Dog Chow High Protein Chicken Classic Ground Canned Dog Food 13 oz. | 12 cans | $12.60 | $1.05 per can $0.08 per ounce |

---

[18] Pricing information obtained from https://www.chewy.com.

CLASS ACTION COMPLAINT

53.    As a result of containing toxic levels of Vitamin D, which endangered the health of dogs and ultimately led to Plaintiff's and members of the Class and Subclass' dogs to become ill or die, Defendants' Products were substantially diminished in value at the point of sale or earlier and/or were worthless for their intended purpose as a dog food.

54.    As a direct and proximate result of Defendants' false and misleading representations and warranties, negligence in effectuating their duty to provide Plaintiff and members of the Class and Subclass with safe, healthy, and nutritious dog food as was expressly and implicitly advertised, breach of warranties, unfair practices, and other unlawful conduct detailed herein, Plaintiff and members of the Class and Subclass incurred actual damages and other economic losses, including but not limited to the monies lost by paying for the Products, veterinary bills, prescription costs, funeral costs, burial costs, and any other cognizable damages to be proven at trial.

## CLASS ACTION ALLEGATIONS

55.    Plaintiff seeks certification of a proposed nationwide class of consumers and a subclass of California consumers under Fed.R.Civ.P. 23 on behalf of herself and on behalf of all other persons who purchased Defendant's Products nationwide and in the State of California (herein throughout, the "Classes").

56.    Excluded from the proposed Classes are Defendants, any entity in which Defendants have a controlling interest, Defendants' legal counsel, officers,

directors, employees, assigns and successors; any persons and entities that purchased the Products at resale; the Judge(s) to whom this matter is assigned and any member(s) of the Judge's staff or immediate family; and Class Counsel.

57.     Plaintiff brings this action on behalf of the following proposed Classes:

a.     Nationwide Class: All persons in the United States who purchased the Products.

b.     California Subclass: All persons in California who purchased the Products.

58.     ***Numerosity***: Defendants manufactured and distributed the Products to retailers across the country and also sold them directly to tens of thousands of consumers.  Defendants have recalled at least 675,000 cases (13.5 million cans) of Products. Therefore, members of the Classes are too numerous to join in a single action. Members of the Classes may be identified through sales records from authorized retailers, veterinary prescription and sales records, and self-identification processes.  Members of the Classes can be notified about this action by mail or E-mail (which can be supplemented by published notice if this Court deems it necessary or appropriate).

59.     ***Commonality and Predominance***: Common questions of law and fact exist as to all proposed members of the Classes and predominate over questions that only affect individual members of the Classes. These common questions of law and fact include, but are not limited to and subject to amendment:

a.  Whether the Products contained toxic levels of Vitamin D;

b.  Whether  Defendants'  labeling,  advertising,  and  marketing
representations and warranties are false or misleading;

c.  Whether Defendants breached any express or implied warranties;

d.  Whether the Products were either diminished in value had no value as a
dog food;

e.  Whether Defendants owed a duty of care to Plaintiff and members of
the Classes;

f.  Whether Defendants breached that duty of care;

g.  Whether Defendants were unjustly enriched as a result Plaintiff and
members of the Classes purchasing the Products;

h.  Whether Plaintiff and members of the Classes have sustained damages
as a result of the conduct alleged herein and, if so, the appropriate
measure of such damages;

i.  Whether  Defendants'  conduct  violated  various  state  consumer
protection statutes; and

j.  Whether Plaintiff and members of the Classes are entitled to punitive
damages.

60.    ***Adequacy***: Plaintiff is an adequate representative of the proposed
Classes because her interests do not conflict with the interests of the members of the
Classes she seeks to represent. Plaintiff has retained attorneys who are competent

and experienced in handling complex and class action litigation, and they will prosecute this case vigorously on behalf of Plaintiff and members of the Classes.

61.    **_Typicality_**: Plaintiff's claims are typical of the claims of the proposed Classes. Plaintiff and the members of the proposed Classes all purchased the Products, giving rise to materially similar claims.

62.    **_Superiority_**: A class action is superior to other available means for the fair and efficient resolution or adjudication of this matter. The injuries suffered by each member of the Classes, while significant on an individual basis, are not large enough to render the pursuit of individual actions economically or judicially feasible. Even if members of the Classes could afford to undergo individualized litigation, the judicial system could not. In addition to the significant burden and expense of managing numerous actions that arise from materially similar questions of law and fact, individualized litigation risks inconsistent judgments. Individualized litigation will also increase the delay and expense to all parties and the judicial system presented by the legal and factual issues of this matter. However, the class action mechanism risks far fewer management difficulties and provides the benefits of a sole adjudication, economy of scale, and holistic supervision by a single court.

63.    In the alternative, the proposed Classes may be certified because:

a.    The prosecution of separate actions by the individual members of the proposed Classes would create a risk of inconsistent adjudications,

which could establish incompatible standards of conduct for Defendants;

b.  The prosecution of individual actions could result in adjudications, which, as a practical matter, would be dispositive of the interests of non-party Class members or which would substantially impair their ability to protect their interests; and

c.  Defendants have acted or refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate final relief with respect to the members of the proposed Classes as a whole.

64.    Defendants benefitted from the sale of the Products to Plaintiff and members of the Classes in a determinable amount.

## COUNT I

## Breach of Express Warranty

65.    Plaintiff, individually and on behalf of the Classes, repeats and realleges all previous paragraphs as if fully set forth herein.

66.    Defendants sold and Plaintiff and members of the Classes purchased Defendants' Products, which they represented and warranted in their labeling, marketing, advertising, and promotion that they were safe and healthy for consumption by dogs and/or were subject to regular and rigorous quality assurance and safety inspections.

CLASS ACTION COMPLAINT

67.     Defendants' Products did not conform to the above-delineated representations and warranties because they contained toxic levels of Vitamin D which is dangerous for consumption by dogs and ultimately led to Plaintiff's and members of the Classes' dogs suffering from severe health conditions and, in some cases, death.

68.     As a direct and proximate result of Defendants' breaches the described herein express warranties and the Products' failure to conform to these warranties, Plaintiff and members of the Classes have been damaged in that they did not receive the Products as expressly warranted and/or paid a premium price for Products when their value was diminished, they had no value for their intended purpose as a dog food, and incurred veterinary costs, prescription costs, and other related damages.

## COUNT II

### Breach of Implied Warranty

69.     Plaintiff, individually and on behalf of the Classes, repeats and realleges all previous paragraphs as if fully set forth herein.

70.     Defendants sold and Plaintiff and members of the Classes purchased Defendants' Products.

71.     At the time Defendants formulated, manufactured, advertised, marketed, sold, and distributed the Products, Defendants impliedly warranted to Plaintiff and members of the Classes that the Products were of merchantable quality and safe and fit for their purpose as a dog food.

CLASS ACTION COMPLAINT

72.    Plaintiff and members of the Classes believed that the Products were of merchantable quality and fit for their intended use as a dog food.

73.    Neither Plaintiff nor members of the Classes altered the Defendants' Products after purchasing them and used them as instructed.

74.    Plaintiff and members of the Classes could not have known about the risks associated with the Products until after their dogs exhibited symptoms of Vitamin D poisoning.

75.    Defendants' Products were not merchantable quality, did not pass without objection in the trade under the label description, were not of fair average quality within that description, were not fit for the ordinary and intended purpose as a dog food, and did not conform to the promises or affirmations of fact Defendants made on their labels, advertising, marketing, and other representations and warranties because they contained toxic levels of Vitamin D.

76.    As a direct and proximate result of Defendants' breaches of their implied warranties and the Products' failure to conform to such warranties, Plaintiff and members of the Classes have been damaged in that they did not receive the Products that were of merchantable quality and/or paid a premium price for Products when their value was diminished, they had no value for their intended purpose, and incurred veterinary costs, prescription costs, and other related damages.

## COUNT III

### Negligence

77.    Plaintiff, individually and on behalf of the Classes, repeats and realleges all previous paragraphs as if fully set forth herein.

78.    Defendants claim to implement regular quality assurance and safety protocols intended to ensure that their Products are safe for dogs to consume and contain ingredients that are safe and will not harm dogs.

79.    Defendants owed a duty to Plaintiff and members of the Classes to formulate, inspect, label, advertise, market, manufacture, distribute, and sell products that are safe and fit for dogs to consume.

80.    Defendants failed to exercise due care, and were negligent in the formulation, inspection, manufacture, distribution, labeling, advertising, marketing, warranting, and sale of the Products to Plaintiff and members of the Classes.

81.    Defendants failed to implement adequate safety inspection procedures to test the Products for toxic levels of Vitamin D, resulting in such Products entering the stream of commerce for sale to Plaintiff and members of the Classes and for consumption by their dogs.

82.    Defendants knew or in the exercise of reasonable care should have known that their Products posed an unreasonable and unacceptable risk of injury or death to Plaintiff's and members of the Classes' dogs, and that their actions and/or omissions would foreseeably result in damages that could have been avoided.

CLASS ACTION COMPLAINT

83.     As a direct and proximate result of Defendants' breaches of their duty of care, Plaintiff and members of the Classes have been damaged and suffered ascertainable losses including payment for dangerous and defective Products, payment of veterinary costs, prescription costs, and other related damages.

## COUNT IV
### Unjust Enrichment

84.     Plaintiff, individually and on behalf of the Classes, repeats and realleges all previous paragraphs as if fully set forth herein.

85.     Plaintiff conferred benefits on Defendants by purchasing the Products at a premium price.

86.     Defendants had knowledge of and enjoyed such benefits.

87.     Defendants have been unjustly enriched in retaining monies derived from Plaintiff's and members of the Classes' purchases of the Products.  It would be unjust and inequitable for Defendants to retain those monies under these circumstances as a result of Defendants' false and misleading representations and warranties described herein because the Products contained unreasonably high levels of Vitamin D that are harmful to dogs, which caused Plaintiff and members of the Classes to suffer injuries and losses because they would not have purchased the Products otherwise.

88.     Defendants should be required to return to Plaintiff and members of the Classes the amount they paid to purchase the Products or else be unjustly enriched.

CLASS ACTION COMPLAINT

## **COUNT V**

**Violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq*.**

89.    Plaintiff, individually and on behalf of the California Subclass, repeats and realleges all previous paragraphs as if fully set forth herein.

90.    Plaintiff and each member of the California Subclass are "consumers" as defined in CLRA § 1761(d).

91.    The Products are "goods" as defined in CLRA § 1761(a).

92.    Defendants are "person[s]" as defined in CLRA § 1761(c).

93.    Plaintiff and each of the members of the California Subclass' purchases of the Products were "transactions" as defined in CLRA § 1761(e).

94.    Defendants' conduct violates the following provisions of the CLRA: (1) representing that goods have characteristics, uses, and benefits which they do not have (CLRA § 1770(a)(5)); (2) representing that goods are of a particular standard, quality, or grade, if they are not (CLRA § 1770(a)(7)); and (3) advertising goods with the intent not to sell them as advertised (CLRA § 1770(a)(9)).

95.    Defendants' conduct described herein was intended to induce consumers to purchase the Products.

96.    Defendants made material misrepresentations and omissions regarding the Products that they knew or should have known were deceptive and likely to

cause consumers to purchase the Products in reliance on those misrepresentations and omissions.

97.   Defendants' conduct was done with conscious disregard of Plaintiff's rights and the rights of the members of the California Subclass.

98.   Plaintiff and members of the California Subclass have been directly and proximately damaged by Defendants' conduct.

99.   Pursuant to CLRA § 1780(a), Plaintiff seeks injunctive relief in the form of an order enjoining Defendants' conduct, and Plaintiff and members of the California Subclass will be irreparably harmed if such an order is not granted.

100.  On May 15, 2019, Plaintiff mailed Defendants notice of their violations of the CLRA in accordance with CLRA § 1782.  If Defendants fail to rectify their conduct within thirty (30) days of receipt of this notice, Plaintiff will seek leave to amend this Class Action Complaint to claim damages under the CLRA.

101.  Plaintiff also seeks the recovery of court costs and reasonable attorneys' fees pursuant to CLRA § 1780(e).

## **COUNT VI**

### **Violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*****

102.  Plaintiff individually and on behalf of the California Subclass, repeats and realleges all previous paragraphs as if fully set forth herein.

103.   California's FAL states that "[i]t is unlawful for any […] corporation […] to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated […] any statement […] which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading […]" FAL § 17500.

104.   Defendants' material misrepresentations and omissions described herein violate FAL § 17500.

105.   Defendants knew or in the exercise of reasonable care should have known that their conduct was false, deceptive, and misleading, including but not limited to their labeling, advertising, and marketing statements described herein.

106.   Defendants' misrepresentations and omissions are materially important to Plaintiff and members of the California Subclass and, therefore, reliance may be presumed.

107.   Plaintiff and members of the California Subclass lost money as a result of Defendants' conduct.

108.   Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17500, Plaintiff and members of the California Subclass seek an order requiring Defendants identify all Products that contain dangerous levels of Vitamin D through stringent testing and, pending such results, ensure all affected Products are removed from the stream of commerce.

109.   Unless such an order is granted, Defendants will continue to engage in conduct as alleged herein in violation of California's FAL.

110.   Plaintiff and members of the California Subclass request an order awarding restitution of any monies wrongfully acquired by Defendants as a result of its above-described misrepresentations and omissions.

111.   Plaintiff and the members of the California Subclass seek an order requiring Defendants to pay actual damages, statutory treble damages, attorneys' fees, and any other relief available.

## COUNT VII

**Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*.**

112.   Plaintiff, individually and on behalf of the Classes, repeats and realleges all previous paragraphs as if fully set forth herein.

113.   California's UCL prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising prohibited by [California's FAL]."

114.   Plaintiff and members of the California Subclass lost money as a result of Defendants' conduct.

115.   Defendants' conduct constitutes "unlawful" practices within the definition set forth in the UCL because Defendants violated the FAL and the CLRA.

CLASS ACTION COMPLAINT

116.   Defendants' conduct constitutes "unfair" practices because they offend established public policy, are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers including Plaintiff and members of the California Subclass.

117.   The harm caused by Defendants' conduct outweighs any utility of such conduct and has and will continue to cause substantial injuries and losses to Plaintiff and members of the California Subclass unless restrained by this Court.

118.   Defendants' conduct is additionally "unfair" within the definition set forth in the UCL because Defendants violated the FAL and the CLRA.

119.   Defendants' conduct constitutes "fraudulent" practices within the definition set forth in the UCL because Defendant's labeling, advertising, and marketing misrepresentations and omissions described herein are false and likely to deceive the public, including Plaintiff and members of the California Subclass.

120.   As a result of Defendants' "unlawful," "unfair," and "fraudulent" conduct, Plaintiff and members of the California Subclass paid premium prices for the Products, which were worth substantially less than Defendants' labeling, marketing, and advertising would promise, or were entirely worthless as a dog food, and Plaintiff and members of the California Subclass did not obtain Products with the various qualities promised by Defendants.

121.   Plaintiff and members of the California Subclass lost money as a result of Defendants' conduct.

122.   Any injuries, damages, and/or losses suffered by Plaintiff and members of the California Subclass are not outweighed by any benefits to consumers, and the injuries, damages, and/or losses are those that consumers could not reasonably have avoided.

123.   Defendants knew or in the exercise of reasonable care should have known that Plaintiff and members of the California Subclass could not have reasonably known or discovered that the Products contained dangerous levels of Vitamin D and were unsafe for consumption by dogs.

124.   Had Plaintiff and members of the California Subclass known that the Products contained dangerous levels of Vitamin D, they would not have purchased them.

125.   Defendants' wrongful business practices constitute a continuous course of unfair competition because Defendants label, advertise, market, and sell their Products in a manner which offends public policy, is done in a manner that is immoral, unethical, oppressive, unscrupulous, and/or injurious to consumers, including Plaintiff and members of the California Subclass.  Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff requests an order requiring Defendants to identify all Products that contain dangerous levels of Vitamin D through stringent testing and, pending such results, ensure all affected Products are removed from the stream of commerce.

CLASS ACTION COMPLAINT

126.    Plaintiff and members of the California Subclass request an order awarding restitution of any monies wrongfully acquired by Defendants as a result of their above-described misrepresentations and omissions, along with any other such relied permitted under the UCL.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, individually and on behalf of herself and the proposed Classes, seeks the following relief:

A.    An order certifying the Nationwide Class and California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Nationwide Class and California Subclass and Plaintiff's attorneys as Class Counsel;

B.    For an order of restitution and all other forms of equitable monetary relief;

C.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

D.    For an order awarding Plaintiff and the Classes' reasonable attorneys' fees, expenses, and costs of suit;

E.    For prejudgment and postjudgment interest on all awarded amounts;

F.    For an order requiring Defendant to identify all Products that contain toxic levels of Vitamin D through rigorous testing and to ensure that any affected Products are removed from the stream of commerce.

G.      For a declaration that Defendants' conduct is in violation of the statutes forming the basis of statutory violations described herein;

H.      For any further relief the Court may deem appropriate or necessary.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims that are triable.


DATED: May 16, 2019                    Respectfully Submitted,

                                       GLANCY PRONGAY & MURRAY LLP

                                       By:  *s/ Marc L. Godino*
                                       Marc L. Godino
                                       1925 Century Park East, Suite 2100
                                       Los Angeles, CA 90067
                                       Telephone: (310) 201-9150
                                       Facsimile:  (310) 201-9160
                                       Email: mgodino@glancylaw.com

                                       *Attorney For Plaintiff And The Proposed Class And Subclass*